UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 5:11-cv-00388-KKC

BRYAN COFFMAN,                                                                                          PLAINTIFF

v.

**OPINION AND ORDER**

CENTRAL BANK & TRUST CO.,                                                                  DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Summary Judgment (DE 28) and Motion for Protective Order (DE 29) filed by the Defendant Central Bank & Trust Co. For the following reasons, the Court will GRANT the Motion for Summary Judgment and DENY as moot the Motion for Protective Order.

**I.      Facts.**

On May 11, 2011, the Plaintiff in this matter, Bryan Coffman, was convicted of 27 criminal charges including mail fraud, wire fraud, securities fraud, and money laundering for actions occurring between 2004 and 2009. Among the counts on which Coffman was convicted were eight counts of wire fraud and two counts of money laundering involving accounts held with the Defendant Central Bank. On May 16, 2012, this Court sentenced Coffman to a prison term of 300 months.

After his trial and conviction, Coffman filed this action in which he alleges that, beginning in 2008, during the course of the Government's investigation of his financial transactions, Central Bank disclosed his financial records to a federal government agency

without a subpoena. Coffman asserts that the bank violated the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq. (the "RFPA").

The bank moves for summary judgment in its favor on Coffman's RFPA claim. It also moves for a protective order that would protect the bank from disclosing a Suspicious Activity Report or any information that would reveal the existence of the Suspicious Activity Report.

**II.     Analysis.**

The RFPA "protects the secrecy of customers' financial records in banks, by limiting both federal law enforcement ability to obtain access to the information, and the bank's freedom to give it out." *Puerta v. United States*, 121 F.3d 1338, 1341 (9th Cir. 1997). The act prohibits financial institutions from providing the government with information contained in the financial records of its customers except in accordance with the procedures set forth in the act. 12 U.S.C. § 3403(a). The act further provides that a bank that violates section 3403(a) may be liable to the customer for damages including actual and punitive damages. 12 U.S.C. § 3417(a).

There are two relevant exceptions to this liability. First, the RFPA provides that it does not apply to documents produced in response to a grand jury subpoena. 12 U.S.C. § 3413(i). The second exception is found in the "safe-harbor" provision of the Annunzio-Wylie Anti-Money Laundering Act, 31 U.S.C. § 5318(g)(3). That provision grants broad immunity to banks that disclose to government authorities *any* possible illegality providing that:

> Any financial institution that makes a voluntary disclosure of *any* possible violation of law or regulation to a government agency *or* makes a disclosure pursuant to this subsection or any other authority . . . shall not be liable to any person under *any law or regulation of the United States*, any constitution, law, or regulation of any State or political subdivision of any State, or under any contract or other legally enforceable agreement (including any arbitration agreement), for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure.

2

31 U.S.C. § 5318(g)(3)(A) (emphasis added).

Coffman asserted in his Complaint that the bank made the disclosures of his financial records without first receiving a subpoena. In its Motion for Summary Judgment, however, the bank submits the affidavit of Jeff Jacob, Central Bank's Senior Vice President and Director of Security, who states that the bank produced Coffman's financial records in response to a grand jury subpoena. After the Court conducted a hearing pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E), the United States filed the grand jury subpoena in the record of this matter. (DE 15, 18.)

In his response to the bank's Motion for Summary Judgment, Coffman acknowledges that "if Central Bank *properly* disclosed his financial records to a federal government agency in response to a subpoena, then his claims are barred" (DE 32, Response at 12) under the two provisions described above: the grand-jury provision in the RFPA and the safe-harbor provision of the Annunzio-Wylie Anti-Money Laundering Act. (DE 32, Response at 12.)

Coffman argues, however, that *if* the bank's disclosures exceeded the scope of the grand jury subpoena, then Central Bank is not protected under either provision. (DE 32, Response at 12.) Thus, Coffman seems to argue, when a plaintiff claims a bank violated the RFPA by making disclosures in response to a grand jury subpoena, the bank must produce in the civil action all the documents it produced in response to the subpoena so that a judge or jury can determine whether the documents were actually requested under the subpoena.

Coffman cites no authority for this procedure and the Court has found none. The RFPA provides that, with certain exceptions not relevant to this issue, "[n]othing in this chapter . . . shall apply to any subp[o]ena or court order issued in connection with proceedings before a grand jury . . . ." 12 U.S.C. § 3413(i). Thus, the RFPA's liability

3

provision simply does not apply where a bank is served with a grand jury subpoena. The act itself contains no requirement that the Court or a jury review the documents produced in response to the subpoena to ensure they fell within the subpoena's scope.

Further, there is a "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958). In fact, financial institution officers, in particular, are prohibited from disclosing to a customer the existence of or information furnished in response to a grand jury subpoena relating to money laundering, mail fraud or wire fraud. 18 U.S.C. § 1510(b)(2).

Further, even if the bank were required to demonstrate that the documents it produced in response to the grand jury subpoena were within the subpoena's scope, in this case, the bank's disclosures could not have exceeded the scope of the subpoena. The grand jury subpoena broadly requested "any and all account information and statements for accounts in the name of Bryan Coffman and/or Megan Coffman from January 1, 2005 until present, or for any account for which they have signature authority." (DE 18.)

In its Motion for Summary Judgment, the bank asserts that its only other disclosure to a government official of Coffman's financial information occurred in relation to a Suspicious Activity Report ("SAR") it filed in May 2008 with the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the United States Department of the Treasury.

The filing of the SAR was mandated by regulations promulgated under the Annunzio-Wylie Anti-Money Laundering Act, 31 U.S.C. § 5311, et seq., the same statute, as discussed above, that grants broad immunity to financial institutions that disclose any possible illegalities to government authorities. The purpose of the act is to "combat the flow of illegal activities, particularly money laundering, for which domestic financial institutions are commonly used to

manage and transfer funds." *Eyo v. United* States, No. 01-6185, 2007 WL 4277511, at *5 (D.N.J. Nov. 29, 2007). "To achieve that stated purpose, Congress provides extensive guidelines by which financial institutions must file reports on many common transactions and otherwise encourages financial institutions to voluntarily disclose activities that appear suspicious." *Id.*

Regulations promulgated pursuant to the act require banks to report to FinCEN "any suspicious transaction relevant to a possible violation of law or regulation." 31 C.F.R. § 1020.320(a). Pursuant to the regulations, banks must file a SAR "no later than 30 calendar days after the date of initial detection by the bank of facts that may constitute a basis for filing a SAR." 31 C.F.R. § 1020.320 (b)(3). As discussed above, the act's safe-harbor provision grants financial institutions broad immunity for "a voluntary disclosure of *any* possible violation of law" and for disclosures made in a SAR. 31 U.S.C. § 5318(g)(3)(A). *See also* 31 C.F.R. § 1020.320(f).

In his Complaint, Coffman alleges that the bank's only disclosures to the federal government regarding his accounts occurred during the federal government's investigation of him for various crimes including money laundering and mail and wire fraud. Nevertheless, Coffman argues in his response to the bank's Motion for Summary Judgment, that Central Bank should not be immune from liability under the safe-harbor provision unless it can demonstrate that its suspicion that a law or regulation may have been violated was held "in good faith" and also that it only disclosed information relevant to the suspicious activity it detected. For this argument, Coffman cites *Lopez v. First Union Nat. Bank of Florida*, 129 F.3d 1186 (11th Cir. 1997). (DE 32, Response at 6.)

In *Lopez*, however, the Eleventh Circuit gave no explanation for imposing a "good-faith" requirement on the safe-harbor provision. The provision itself contains no such requirement. In

5

*Nieman v. Firstar Bank*, No. C03-411-MWB, 2005 WL 2346998 (N.D. Iowa 2005), the court noted that the *Lopez* decision "has been the subject of significant criticism from other federal courts." *Id*. at *6 (citing *Whitney Nat'l Bank v. Karam*, 306 F.Supp.2d 678, 680 (S.D.Tex.2004); *Gregory v. Bank One Corp*., 200 F.Supp.2d 1000, 1003 (S.D.Ind.2002); *Stoutt v. Banco Popular de Puerto Rico*, 158 F.Supp.2d 167, 175 (D.P.R.2001)). Two circuit courts have rejected the *Lopez* good-faith requirement. *See Stoutt v. Banco Popular de Puerto* Rico, 320 F.3d 26, 29 (1st Cir. 2003); *Lee v. Bankers Trust Co.*, 166 F.3d 540 (2nd Cir. 1999). As the Second Circuit pointed out in *Lee*:

> The plain language of the safe harbor provision describes an unqualified privilege, never mentioning good faith or any suggestive analogue thereof. The Act broadly and unambiguously provides for immunity from *any* law (except the federal Constitution) for *any* statement made in an SAR by *anyone* connected to a financial institution. There is not even a hint that the statements must be made in good faith in order to benefit from immunity. Based on the unambiguous language of the Act, [a bank] enjoys immunity from liability for its filing of, or any statement made in, an SAR.

*Id.* at 544.

In rejecting the idea that a bank must demonstrate "good faith" in order to invoke the immunities provided under the safe-harbor provision, the Second Circuit also considered "common sense." *Id*. The court noted that the regulations under the Annunzio-Wylie Anti-Money Laundering Act not only require banks to file SARs but also prohibit them from disclosing either that a SAR has been filed or the information contained in the SAR. *Id*. *See also* 31 C.F.R. § 1020.320(e). The court concluded that the statute cannot require banks to demonstrate that their disclosures were made in good faith when the regulations explicitly prohibit banks from disclosing the fact that they filed a SAR and the SAR's contents. "It flies in

6

the face of common sense to assert that Congress sought to impale financial institutions on the horns of such a dilemma." *Id*.

Finally, though recognizing there was no need to explore the legislative history of an unambiguous statute, the Second Circuit noted that a prior draft of the statute did include an "explicit good faith requirement for statements made in an SAR." *Id*. (citing 137 Cong. Rec. S16, 642 (1991)). The court noted that the requirement was deleted and not included in the final version of the statute. *Id*.

In *Stoutt*, in rejecting a good-faith requirement for the safe-harbor provision, the First Circuit noted that a reason for imposing such a requirement on banks would be to prevent them from making "wholly unfounded accusations" against an individual. 32 F.3d at 31. The court explained, however, that penalties other than civil liability will deter bank officials from making false accusations including employment termination and government enforcement actions for fines and imprisonment. *Id*. at 32. Further, the government officials to whom any false accusations are made "provide their own filter as to what investigations are pursued and made public." *Id*.

The Court agrees with the First and Second Circuits and the vast majority of federal courts that have not read a good-faith requirement into the broad immunity provision of the Annunzio-Wyle Anti-Money Laundering Act.

Furthermore, even assuming there is a good-faith requirement for immunity under the act, the bank easily meets that requirement here. Again, Coffman himself alleges that the bank only disclosed information to the government during the federal government's investigation of him for money laundering and other crimes. (DE 7, Amended Complaint, ¶¶ 5-7.) In his affidavit, Jacob states that the bank filed a SAR in May 2008 and that the SAR was "related to suspicious

transactions and account activities."[1] As discussed, after the bank filed the SAR, a jury convicted Coffman of 27 criminal charges including eight counts of wire fraud and two counts of money laundering in connection with accounts at Central Bank. (*United States v. Coffman et al.*, Crim. No. 5:09-CR-181-KKC, DE 528.) At the very least, the convictions make clear that the bank's suspicions that Coffman may have violated a law were in good faith.

As to Coffman's contention that Central Bank should have to demonstrate that the information it disclosed to FinCEN was related only to suspicious activity, as authority for this proposition, Coffman cites only a single line from the *Lopez* decision. (DE 32, Response, p. 6 (citing *Lopez*, 129 F.3d at 1195.)) The Annunzio-Wylie Anti-Money Laundering Act itself does not require any such showing. The act simply provides immunity for disclosures of any possible illegality. Further, in order to make this showing, a bank would necessarily have to identify the information it disclosed with its SAR. Again, such disclosures are prohibited. 31 C.F.R. § 1020.320(e). Finally, requiring banks that are defending civil actions to prove that each piece of information they disclose to FinCEN is related to suspicious activity is inconsistent with the purpose of the act which is to encourage banks to disclose to government officials any and all possible violations of the law.

For this reason, the Court will not permit Coffman to take discovery of all of the bank's disclosures to government authorities. Coffman argues that, even if Central Bank qualifies for immunity under the safe-harbor provision, he should nonetheless be permitted to take discovery "regarding the extent to which Central Bank's disclosures were pursuant to the May 2008 SAR and September 2008 grand jury subpoena." (DE 32, Response at 14.) In other words, Coffman

---

[1] In this case, the fact that the SAR was filed and its contents were revealed to Coffman during his criminal trial.

seeks discovery of all the bank's disclosures to the federal government so he can see if all were made in response to the grand jury subpoena or with the SAR.

The bank, however, is immune from liability for any "disclosure of *any* possible violation of law or regulation to a government agency." 31 U.S.C. § 5318(g)(3). Thus, even if there were some disclosures beyond the response to the grand jury subpoena or the SAR, the bank is immune from liability if the disclosures were of any possible illegality. In his Complaint, Coffman charged that the bank made disclosures during a federal investigation of him for crimes including money laundering. (DE 7, Amended Complaint, ¶¶ 5-8.) Coffman was ultimately convicted of 27 criminal charges including 10 counts of money laundering and wire fraud in connection with accounts at Central Bank. Objectively then, there was certainly a "possible" violation of the law in this case. The Court will not permit discovery on an implausible and speculative theory that the bank made some disclosures that were not related to any possible violation of the law.

### III.  Conclusion.

For all these reasons, the Court hereby ORDERS as follows:

1) The Defendant's Motion for Summary Judgment (DE 28) is GRANTED;

2) The Defendant's Motion for Protective Order (DE 29) is DENIED as moot;

3) The Defendant's Ex Parte Sealed Motion (DE 10) is DENIED as moot, this issue having been resolved after the Court conducted a hearing pursuant to Fed. R. Crim. P. 6(e)(3)(E); and

4) This matter is STRICKEN from the Court's active docket.

Dated this 25th day of September, 2012.



Signed By:
*Karen K. Caldwell*  KKC
United States District Judge